NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>MARION CHATMON,<br>　　　　　　Debtor. | BAP No. CC-25-1151-SGL<br><br>Bk. No. 2:25-bk-16046-WB |
| MARION CHATMON,<br>　　　　　　Appellant,<br>v.<br>PACIFIC LOANWORKS, INC.,<br>　　　　　　Appellee. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the Central District of California
Julia Wagner Brand, Chief Bankruptcy Judge, Presiding

Before: SPRAKER, GAN, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Chapter 13[1] debtor Marion Chatmon appeals from an order granting

Pacific Loanworks, Inc. relief from stay. The order in relevant part annulled

the stay retroactively to validate Pacific Loanworks' postpetition

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

foreclosure of real property in which Marion claimed a fractional ownership interest.[2] The bankruptcy court applied the correct legal standard for granting retroactive stay annulment. And none of its factual findings were clearly erroneous. Furthermore, Marion's belated attempt on appeal to challenge Pacific Loanworks' standing lacks merit. Accordingly, we AFFIRM.

## FACTS[3]

### A. Marion's daughter borrows money from the lenders.

In September 2019, Marion's daughter Ashlei borrowed $355,000. She secured her obligation to repay this loan by granting the lenders a security interest in a parcel of mixed-use real property located on Crenshaw Boulevard in Los Angeles, California ("Property"). To document this loan transaction, Ashlei executed a note and a deed of trust. The note collectively identified several different individuals and a family trust as the "Lender" but directed Ashlei to make all loan payments to Pacific Loanworks.[4] In addition, the deed of trust identified Pacific Loanworks as

---

[2] We refer to Marion by her first name for ease of reference and to differentiate her from her daughter Ashlei Antionette Chatmon-James, to whom we refer as Ashlei. No disrespect is intended to either party.

[3] We exercise our discretion, when appropriate, to take judicial notice of documents electronically filed in the underlying bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[4] Some of the original lenders later assigned their respective rights under the note and deed of trust to others. Regardless, Pacific Loanworks has claimed to represent the interests of the lenders—whoever they might be—as their servicing agent at all relevant times.

trustee under the deed of trust, with a power to sell the Property in the event of a default.[5]

The note contemplated that Ashlei would make monthly interest-only payments until the loan matured in November 2022, at which point the entire remaining loan balance would come due. The parties agreed in 2022 to extend the maturity date of the loan to November 2024.

## B. Events leading up to Pacific Loanworks' foreclosure and Marion's bankruptcy filings.

According to Pacific Loanworks, unbeknownst to it and without the lenders' consent, Ashlei conveyed a 50% interest in the property to Marion in December 2022 or January 2023.

Ashlei failed to repay the outstanding loan balance when the extended loan matured in November 2024. Consequently, Pacific Loanworks initiated foreclosure proceedings against the Property. On the eve of the scheduled foreclosure sale in April 2025, Marion filed a chapter 13 bankruptcy and immediately notified the foreclosure trustee to prevent the trustee's sale from moving forward ("First Bankruptcy"). However, the bankruptcy court entered an order on July 11, 2025, granting the chapter 13 trustee's motion to dismiss the First Bankruptcy for failure to make any plan payments and failure to appear at her continued § 341(a) meeting of

---

[5] Pacific Loanworks subsequently executed and recorded a Substitution of Trustee naming Total Lender Solutions, Inc. as successor trustee under the deed of trust. Total Lender Solutions later served as the foreclosing trustee at the trustee's sale.

creditors.

Marion filed her second chapter 13 petition on July 17, 2025 ("Second Bankruptcy"). The foreclosure trustee completed the trustee's sale of the Property roughly forty-five minutes after the commencement of the Second Bankruptcy, allegedly without any knowledge of the Second Bankruptcy.

## C.    Pacific Loanworks moves for relief from stay.

Less than a week later, Pacific Loanworks moved for relief from stay. The motion sought not only to permit Pacific Loanworks to proceed with its rights under state law to perfect the prior foreclosure sale and obtain possession of the Property but also to annul the stay retroactively to validate the foreclosure sale even though the sale occurred postpetition. Pacific Loanworks identified itself as the lenders' duly-authorized servicing agent. In two accompanying declarations, the movant's president Matthew Gross reiterated that Pacific Loanworks was the servicing agent for the lenders, who qualified as both "holders" of the note and "beneficiaries" under the deed of trust.

The stated basis for relief from stay was Marion's alleged misconduct. Among other things, Gross stated in his supporting declarations that Ashlei and Marion had a history of sharing fractionalized interests in real property and filing serial, skeletal bankruptcies to impede foreclosure. He further asserted that Marion and Ashlei were engaging in a scheme to delay, hinder, or defraud their creditors. Gross also stated that both Pacific Loanworks and the lenders were unaware of the Second

4

Bankruptcy until after completion of the foreclosure sale to lenders by partial credit bid.[6]

Marion initially filed a request for additional time to respond to the relief from stay motion. She represented that she recently had undergone a surgical procedure and hence needed more time to respond. The day before the first scheduled relief from stay hearing, August 11, 2025, Marion filed two responses to the motion—one by counsel and the other pro se. The response filed by counsel focused on the value of the Property and whether it was necessary for an effective reorganization. This response claimed that Marion had $700,000 in equity in the Property and the Property was necessary for an effective reorganization. Marion's one-page pro se response alleged that Pacific Loanworks and its agents had notice of her Second Bankruptcy prior to the trustee's sale but nonetheless proceeded with the sale in willful violation of the automatic stay. Neither response was accompanied by any supporting evidence.

The first hearing on the relief from stay motion was held on August 12, 2025. Notwithstanding his client's allegations to the contrary, Marion's counsel conceded at the hearing that the lenders (and Pacific Loanworks)

---

[6] Pacific Loanworks also claimed that Marion tried to hide her First Bankruptcy by changing her Social Security number as stated in the petition commencing her Second Bankruptcy. However, the petition at page 3 specifically disclosed the First Bankruptcy. On the other hand, neither of these petitions listed Marion's bankruptcy filed in August 2019, even though the petition asks debtors to identify all bankruptcies they have filed in the last eight years.

did not have notice of the Second Bankruptcy at the time the foreclosure occurred. He further confirmed that he was not alleging that the foreclosure sale occurred in bad faith. Marion's counsel instead pressed his argument regarding equity and reorganization, even though Pacific Loanworks had not sought stay relief based on § 362(d)(2).

Ultimately, the bankruptcy court stated that it would grant relief from stay permitting Pacific Loanworks to pursue its rights under state law.[7] The court continued the hearing to August 21, 2025, to permit Marion additional time to respond to Pacific Loanworks' stated grounds for retroactive annulment.

### D.     The parties' supplemental briefing and the bankruptcy court's stay annulment ruling.

Marion, through counsel, filed a supplemental opposition to the stay motion. Despite counsel's concession at the August 12, 2025 hearing, the supplement pressed her claim that the foreclosure trustee and lenders had notice of the Second Bankruptcy at the time the foreclosure sale occurred. Marion also insisted that she had not defaulted on the loan—that she had tendered payment, but Pacific Loanworks refused to accept it. She further maintained that the foreclosure sale was a sham, because no "real money" exchanged hands and because the sale price extinguished Marion's

---

[7] According to the court, relief from stay going forward was appropriate because Marion was not the borrower under the note, so she was not entitled to reorganize this debt under the Code. The court also denied prospective relief under § 362(d)(4). These rulings have not been challenged by Marion on appeal.

$700,000 in equity in the property. But Marion submitted no evidence to support any of these allegations.

Pacific Loanworks responded to Marion's supplemental opposition. It pointed to Marion's counsel's multiple statements at the August 12, 2025 hearing indicating that he was not asserting that the lenders conducted the foreclosure sale in bad faith or had advance notice of the Second Bankruptcy. The movant also set forth the factors typically considered for annulment of the stay and explained why under those factors it was entitled to annulment.

Pacific Loanworks then pointed out that Marion had submitted no evidence to support any of her allegations. In contrast to Marion's supplemental papers, Pacific Loanworks' supplemental papers included two supporting declarations. Gross submitted an additional declaration in which he explained that Pacific Loanworks had rejected and returned a tendered (monthly) payment from Marion because the loan had fully matured. Meanwhile, Pacific Loanworks' counsel Gerrick Warrington submitted a declaration, which included the transcript from the August 12, 2025 hearing.

The bankruptcy court held the second and final relief from stay hearing on August 21, 2025. Both Marion and her counsel spoke at the hearing. Marion claimed to have records showing that she notified the creditor by phone and email of the Second Bankruptcy. But she never explained why she did not present this evidence to the court as part of her

supplemental opposition. Her counsel, meanwhile, focused once again on Marion's alleged equity in the property and argued that it would be unfair to grant annulment, which would deprive Marion of her equity in the Property and simultaneously afford the lender a windfall. Marion's counsel further claimed that the lenders would not suffer any prejudice if the sale was deemed void and they were forced to re-notice the sale. Pacific Loanworks largely recapitulated the same points it had advanced in its supplemental brief.

The bankruptcy court then rendered its oral ruling. After reciting the stay annulment factors set forth in *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 25 (9th Cir. BAP 2003), the court weighed the relevant factors and concluded that annulment of the stay was appropriate. On August 22, 2025, the court entered its relief from stay order. Marion timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157. We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.  Was Pacific Loanworks entitled to seek relief from stay on behalf of the lenders?

2.  Did the bankruptcy court err by not conducting an evidentiary hearing?

3.  Did the bankruptcy court abuse its discretion by annulling the stay?

8

**STANDARDS OF REVIEW**

Questions regarding a party's standing and status as a real party in interest typically present questions of law, which we review de novo. *See Allen v. US Bank, Nat'l Ass'n (In re Allen)*, 472 B.R. 559, 564 (9th Cir. BAP 2012). "De novo review is independent, with no deference given to the trial court's conclusion." *Id.* (citing *Barclay v. Mackenzie (In re AFI Holding, Inc.)*, 525 F.3d 700, 702 (9th Cir. 2008)).

We review the bankruptcy court's annulment of the stay for an abuse of discretion. *In re Fjeldsted*, 293 B.R. at 18. The decision whether to hold an evidentiary hearing also is reviewed for an abuse of discretion. *Tyner v. Nicholson (In re Nicholson)*, 435 B.R. 622, 629 (9th Cir. BAP 2010), *partially abrogated on other grounds by*, *Law v. Siegel*, 571 U.S. 415, 423-27 (2014). The bankruptcy court abused its discretion if it applied an incorrect legal standard or its factual findings were illogical, implausible, or without support in the record. *TrafficSchool.com, Inc. v. Edriver, Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

**DISCUSSION**

In her opening appeal brief, Marion only challenges the portion of the relief from stay order annulling the stay. She primarily argues that the bankruptcy court should have held an evidentiary hearing. She additionally contends that the court did not weigh the relevant equitable factors before annulling the automatic stay. For the first time she also asserts that Pacific Loanworks failed to present sufficient or admissible

evidence that it had standing—or was a real party in interest ("RPII")—entitled to seek relief from stay on behalf of the lenders. We start with the standing/RPII issue and then address the other issues in turn.

## A.    Pacific Loanworks was entitled to seek relief from stay.

Citing *Veal v. American Home Mortgage Servicing, Inc. (In re Veal)*, 450 B.R. 897 (9th Cir. BAP 2011), Marion asserts that Pacific Loanworks lacked standing to seek relief from stay and was not the RPII entitled to enforce the note and deed of trust. Relying on *Veal*, Marion insists that Pacific Loanworks failed to establish that it is the servicing agent for the lenders under the note and deed of trust. She complains that Pacific Loanworks "styled itself as a servicing agent" for the lenders but failed to submit the servicing agreement or other evidence to show it was authorized to act for the lenders.

*Veal* does not support Marion's position. In *Veal*, this Panel was careful to distinguish between Article III standing, prudential standing, and RPII doctrine. *Id.* at 906-07. Under *Veal*, there can be no legitimate question that Pacific Loanworks had Article III standing. In the parlance of *Veal*, injury in fact was established because the automatic stay prohibited Pacific Loanworks from pursuing its alleged remedies against Marion, causation existed because Pacific Loanworks could not exercise those alleged remedies absent relief from stay, and redressability existed because relief from stay—specifically annulment of the stay—would retroactively validate the foreclosure sale. *See id.* at 906.

As for prudential standing and RPII, unlike in *Veal*, Marion never has challenged the lenders' status as the holders of the note and the beneficiaries under the deed of trust. Moreover, notwithstanding her multiple statements on appeal to the contrary, Marion never disputed during the relief from stay proceedings that Pacific Loanworks was the duly authorized servicing agent for the lenders. In fact, her filings all implicitly assumed that Pacific Loanworks was authorized to act on behalf of the lenders. Indeed, she and her counsel repeatedly referred to movant as if it were, itself, the lender and the foreclosing party.

In any event, during the course of the relief from stay proceedings, Pacific Loanworks' president submitted multiple declarations in which he stated that his company was the servicing agent authorized to act for the lenders, who were holders of the note and beneficiaries under the deed of trust. Marion never objected to this evidence or filed anything during the relief from stay proceedings indicating that she disputed Pacific Loanworks' asserted role as servicer for the lenders. Her statements and argument on appeal to the contrary are simply incorrect.

Gross's declarations and the accompanying loan documents were the only evidence before the bankruptcy court on the issue of Pacific Loanworks' status as servicer for the holders of the note and beneficiaries under the deed of trust. The loan documents identified Pacific Loanworks as the party to whom payments should be made under the note and as trustee under the deed of trust. These roles are consistent with and tend to

corroborate Pacific Loanworks' asserted status as servicer for the lenders.

In the absence of any dispute or evidence to the contrary, the court accepted Pacific Loanworks' prima facie evidence that it was the servicer for the lenders. Under these circumstances, the bankruptcy court did not commit reversible error by treating Pacific Loanworks as the servicer for the lenders and as a party entitled to seek relief from stay on their behalf. *See generally In re Veal*, 450 B.R. at 920 (holding that *when a debtor challenges an alleged servicer's standing*, "that servicer must show it has an agency relationship with a 'person entitled to enforce' the note").

Nor was the bankruptcy court obliged to hold an evidentiary hearing regarding Pacific Loanworks' standing. Though Marion claims that she requested an evidentiary hearing, we have found nothing in the relief from stay record supporting this claim. Furthermore, even if she had requested such a hearing, she was not entitled to it. Relief from stay motions are contested matters governed by Rule 9014 and subject to the procedures made applicable by that Rule. *See First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC (In re First Yorkshire Holdings, Inc.)*, 470 B.R. 864, 871 (9th Cir. BAP 2012). Contested matters may be disposed of without an evidentiary hearing when there are no disputed material factual issues presented by the parties for the court to decide. *See, e.g., Caviata Attached Homes, LLC v. U.S. Bank, Nat'l Ass'n (In re Caviata Attached Homes, LLC)*, 481 B.R. 34, 44 (9th Cir. BAP 2012); *Khachikyan v. Hahn (In re Khachikyan)*, 335 B.R. 121, 126 (9th Cir. BAP 2005). When, as here, the adverse party fails to raise a

genuine dispute regarding a material factual issue, the bankruptcy court need not hold an evidentiary hearing. *See In re Caviata Attached Homes, LLC*, 481 B.R. at 45-46; *In re Khachikyan*, 335 B.R. at 128; *see also FAB 5 LLC v. Dye (In re FAB 5 LLC)*, 2025 WL 2556098 (9th Cir. BAP Sept. 5, 2025) ("The court only is required to hold an evidentiary hearing when the parties' initial papers demonstrate the existence of a genuine and material disputed factual issue.").

Marion needed to do something more than complain for the first time on appeal that the bankruptcy court should have held an evidentiary hearing on the standing issue. Given the unchallenged evidence in the relief from stay record regarding Pacific Loanworks' status as servicing agent for the holders of the note and the beneficiaries under the deed of trust, the bankruptcy court did not commit reversible error by treating Pacific Loanworks as the party entitled to seek relief from stay with respect to the foreclosure sale of the Property.

**B.     The bankruptcy court did not abuse its discretion when it annulled the stay.**

Marion's only substantive argument concerns the bankruptcy court's decision to annul the stay. Her argument is twofold. First, she claims that the court did not make sufficient findings or conduct an adequate analysis of the relevant circumstances. According to her, the court granted annulment "without adequate equitable balancing and on an inadequate record." Second, Marion again assails the bankruptcy court's failure to hold

13

an evidentiary hearing—even though she never requested one and never presented any evidence demonstrating the existence of a genuine and material disputed factual issue. We disagree with Marion on both counts.

At the August 21, 2025 relief from stay hearing, the bankruptcy court offered a detailed analysis of the annulment issue and rendered specific factual findings. The court cited *In re Fjeldsted*, 293 B.R. at 25, and recounted the factors articulated in that decision as relevant to whether stay annulment should be granted. These factors included:

1. Number of filings;

2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;

3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;

4. The debtor's overall good faith;

5. Whether creditors knew of the stay but nonetheless took action, thus compounding the problem;

6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;

7. The relative ease of restoring parties to the status quo ante;

8. The costs of annulment to debtors and creditors;

9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;

10. Whether, after learning of the bankruptcy, creditors

14

proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;

11. Whether annulment of the stay will cause irreparable injury to the debtor;

12. Whether stay relief will promote judicial economy or other efficiencies.

*Id.* (citation modified).

The bankruptcy court also acknowledged *Fjeldsted*'s admonition that these factors should not be treated as if they were an algebraic formula or a rigid scorecard; rather, they were meant to be flexible reference points in a loose analytical framework. *See id.* at 25. As the bankruptcy court explained:

So those are the things I have to consider. And in considering-- and not one of them is more important than another, I have to consider them in totality and I am–some may be relevant, some may not be relevant, but I use those factors in order to make my decision.

As to the first and second factors, the bankruptcy court reasoned that Marion's history of multiple bankruptcy filings, and her commencement of the bankruptcies just before foreclosure, "tends to indicate an intention to delay or hinder creditors." Thus the court indicated that these factors favored annulment. As to the third factor—weighing the prejudice to the lenders and third parties absent stay annulment—the court indicated that the only attendant prejudice was unnecessary delay in completing a foreclosure sale that simply was going to be repeated if the stay was not

15

annulled. As the court explained, its August 12, 2025 decision to grant relief from stay to permit Pacific Loanworks to proceed with its state law remedies, along with the statutory termination of the stay after 30 days under § 362(c)(3)(A), meant that even if it did not annul the stay, Pacific Loanworks was free to immediately reinitiate a foreclosure sale. So, this factor also favored annulment.

As to the fourth factor—Marion's good faith—the court declined to find that she had been acting in bad faith on the record presented. The court indicated that the issue of Marion's good faith or bad faith in seeking relief under the Code was an open question. Thus, the court did not weigh Marion's good faith or bad faith either in favor of or against stay annulment.

As to the fifth factor regarding the lenders' knowledge of the stay, the bankruptcy court specifically found that they "did not know of the stay before completing the [trustee's] sale." Marion claims on appeal that she placed multiple phone calls to the foreclosure trustee Total Lender Solutions immediately after her July 17 petition filing. But she presented no evidence of these facts to the bankruptcy court as part of the relief from stay proceedings.[8] The only evidence of notice was presented by Pacific Loanworks. One of Gross's declarations stated that the movant and the

---

[8] Her appeal papers include a declaration in which she details her alleged phone calls to Total Lender Solutions. Aplt. Opn. Br. at pp. 38-39 of 43. But Marion apparently created, executed, and submitted the declaration only as part of her appeal papers.

16

lenders did not learn of the July 17, 2025 bankruptcy filing until after the foreclosure sale occurred. Thus, the evidence in the record at the time of the court's decision supported its finding that the lenders did not know about the stay when the foreclosure occurred. Again, this factor favored annulment.

As for the sixth factor regarding Marion's compliance with the Code and the applicable rules, the court found that her compliance was "a little problematic." The court indicated that Marion had struggled to perform some of her duties as a debtor in both of her recent bankruptcies despite being represented by counsel. Accordingly, this was another factor in favor of annulment.

As to the seventh factor regarding the ease of restoring the status quo ante, the court found that restoring the status quo would have been easy. This finding was supported by the undisputed fact that the foreclosing lenders were the successful purchasers at the foreclosure sale. This factor did not militate in favor of annulment.

The eighth factor concerned the relative cost to the debtor and the lenders associated with the decision of whether to annul the stay. The court indicated that this factor favored annulment. The court apparently weighed the delay the lenders were going to incur against the fact that the debtor would be immediately confronted with a new foreclosure sale even if stay annulment was denied. Thus, the court's comments indicate that it

17

concluded that the balance of costs tipped in favor of the lenders.[9]

As to the ninth factor, how quickly the lenders sought annulment, the court observed that the lenders moved for annulment very quickly—within days of the foreclosure sale. Thus, this factor also favored annulment. Similarly, the tenth factor favored annulment. The court found that the lenders did not take any further steps in violation of the stay once they learned of Marion's July 17, 2025 bankruptcy filing.

As for the eleventh factor—the prospect of irreparable harm to Marion—the court found that she would not suffer irreparable harm if the stay was annulled, because the lenders could simply reinitiate the foreclosure sale. Again, this factor favored annulment.

Finally, as to the twelfth factor, the court found that annulment of the stay would promote judicial economy because it would retroactively validate the foreclosure sale that already had occurred.

In sum, the bankruptcy court found that virtually all the *Fjeldsted* factors favored annulment. Moreover, the evidence in the record supported the court's analysis and findings. Marion has failed to sufficiently explain

---

[9] Marion's counsel argued before the bankruptcy court that the cost to her of annulling the stay was substantial. He maintained that annulling the stay would effectively prevent her from being able to resell the Property and capture what she claimed was $700,000 in equity. The court's comments suggest that the court gave little or no credence to this argument. As the court indicated, relief from stay already was in effect, a new foreclosure sale would follow shortly even if the stay was not annulled, and there was no evidence of any sale in prospect by Marion. In short, Marion's ability to capture any equity in the Property was speculative at best and nonexistent at worst.

why any of these findings—or the court's ultimate decision to annul the stay based on those findings—were illogical, implausible or without support in the record. Nor are we aware of any such grounds.[10]

This only leaves for consideration Marion's insistence that the court should have held an evidentiary hearing on the stay annulment factors. However, as we already have explained, an evidentiary hearing was not required here because Marion's opposition failed to demonstrate the existence of any genuine and material disputed factual issue.

Consequently, Marion has failed to establish that the bankruptcy court's annulment of the stay should be reversed or vacated.

## CONCLUSION

For the reasons set forth above, we AFFIRM.

---

[10] Beginning on page 111 of the document she filed with this Panel on March 16, 2026, Marion requested that we accept as her opening appeal brief the brief beginning on page 115 of her March 16, 2026 filing. However, on March 6, 2026, this Panel issued an order denying her request to file a late opening brief because she already had filed an opening brief on January 6, 2026. Accordingly, we have treated pages 115 through 132 of her March 16, 2026 filing as her reply brief in this appeal, and we have reviewed and considered its contents as part of our analysis in this appeal.